# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNICATCH INDUSTRIAL CO., LTD. AND TC INTERNATIONAL, INC.<br>  Plaintiffs,<br>  v.<br>UNITED STATES,<br>  Defendant<br>  - and -<br>MID CONTINENT STEEL & WIRE, INC.,<br>  Defendant-Intervenor. | Court No. 19-00052 |

## PLAINTIFFS' REPLY BRIEF

Ned H. Marshak
Max F. Schutzman
Dharmendra N. Choudhary

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
1201 New York Avenue, NW - Ste. 650
Washington, D.C. 20005
(202) 783-6881
*Counsel for Plaintiffs*

October 22, 2019

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ............................................................................................................. i

**TABLE OF AUTHORITIES** ..................................................................................................... ii

**ARGUMENT** .............................................................................................................................. 2

    I.    THE GOVERNMENT'S AND MID CONTINENT'S ARGUMENTS THAT UNICATCH FAILED TO EXHAUST ITS ADMINISTRATIVE REMEDIES SHOULD BE REJECTED SINCE IT IS DIRECTLY CONTRARY TO COMMERCE'S FINDINGS AND WELL ESTABLISHED JUDICIAL PRECEDENT ............................................................... 2

    A.    Unicatch Exhausted Administrative Remedies ................................................................. 3

    B.    Alternatively, Unicatch's Failure to Exhaust Should be Excused .................................... 7

    C.    Judicial Precedent Cited by the Defendant are readily distinguishable from the facts in this case .................................................................................................................................. 11

**CONCLUSION** ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 925 F. Supp. 2d 1367 (CIT 2013)............ 5

*Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349 (Ct. Int'l Trade 2018)............ 11, 12

*Itochu Bldg. Prod. Co. v. United States*, 39 ITRD 1522 (Ct. Int'l Trade 2017) ............................ 7

*Itochu Bldg. Prod. v. United States*, 733 F.3d 1140 (Fed. Cir. 2013).................................... 10, 11

*Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185 (Fed. Cir. 1990)............................ 12, 13, 14

*Valley Fresh Seafood, Inc. v. United States,* 31 C.I.T. 1989 (Ct. Int'l Trade 2007) ....................... 7

*Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353 (Fed. Cir. 2019) ..... 9, 10, 11

*Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) . 7, 8, 9

**Statutes**

28 U.S.C. § 2637(d) ...............................................................................................................9

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE MARK A. BARNETT, JUDGE**

|  |  |
|---|---|
| UNICATCH INDUSTRIAL CO., LTD. AND TC INTERNATIONAL, INC. | : |
| Plaintiffs, | : |
| v. | : |
| UNITED STATES, | : |
| Defendant | :    Court No. 19-00052 |
| - and - | : |
| MID CONTINENT STEEL & WIRE, INC., | : |
| Defendant-Intervenor. | : |

## **PLAINTIFFS' REPLY BRIEF**

Plaintiffs, Unicatch Industrial Co., Ltd. ("Unicatch") and TC International, Inc. ("TC International") (collectively, "Unicatch"), hereby reply to arguments in the Response Briefs filed by Defendant, United States ("the Government") ("Gov. Br.") on September 17, 2019, and Defendant-Intervenor, Mid Continent Steel & Wire, Inc. ("Mid Continent") ("Mid Continent Br."), on October 1, 2019.

1

**ARGUMENT**

I. **THE GOVERNMENT'S AND MID CONTINENT'S ARGUMENTS THAT UNICATCH FAILED TO EXHAUST ITS ADMINISTRATIVE REMEDIES SHOULD BE REJECTED SINCE IT IS DIRECTLY CONTRARY TO COMMERCE'S FINDINGS AND WELL ESTABLISHED JUDICIAL PRECEDENT**

In its Opening 56.2 brief, Plaintiff, Unicatch established that Commerce's failure to offset Chun Yu's "Net Profit before Tax" at Code 7900 (286,917) by the amount reported in line item Code 7070, "Profit/Loss amount of the subsidiaries, the related parties and the joint ventures using equity method" (60,516) is not in accordance with its well established practice for computation of an undistorted constructed value ("CV") profit ratio. Unicatch demonstrated that the Department of Commerce ("Commerce") explicitly addressed this issue, pursuant to which the agency did not adjust Chun Yu's "Net Profit Before Tax" by two subsequently itemized line items related to profit/loss amount of Chun Yu's subsidiaries, related parties and joint ventures at Code 8330 (- 10,643) and 8380 (- 2,752). However, the agency erred by failing to offset the reported "Net Profit before Tax" (286,917) by a prior itemized line item at Code 7070 (60,516), since even though the latter relates to Chun Yu's subsidiaries, related parties and joint ventures, it is nonetheless embedded in the amount of 286,917. Chun Yu Br., 2-9.

In its response brief, the Government did not argue that Commerce's determination was not supported by substantial evidence. The Government merely argued that this Court should affirm Commerce's determination solely on grounds of an alleged failure to exhaust administrative remedies. Gov. Br., 8-11. Defendant-Intervenor, Mid Continent, simply adopts Defendant's exhaustion arguments. Mid Continent Br., 1-2. As set forth below, the Government and Petitioners position is contradicted by substantial record evidence and established precedent and is contrary to law.

2

## A. Unicatch Exhausted Administrative Remedies

The Defendant argues that "while Unicatch did, in its rebuttal case brief, argue that Commerce offset line item 7900 with line items 8330, 8380, and 8361, it notably did *not* argue that Commerce should offset line item 7900 with line item 7070, as it does here" and that "this constitutes a clear failure to exhaust administrative remedies" because "Commerce did not have the opportunity to consider it." Gov. Br., 8-9. The Defendant relies on judicial precedent stating that "the doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"" and that therefore ""……courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against *objection made at the time appropriate under its practice*."" Gov. Br., 9. As set forth below, the Government's and Mid Continent's arguments reveal a fundamental misunderstanding of the exhaustion doctrine.

Set forth below is the relevant portion of Chun Yu's financial statement with the key line items highlighted. Data from USDOC to File Pertaining to PT Attachment 3: CV Spreadsheets, **PR 168, 3807404-03**.

| Chun Yu 2016 FS | | | |
|---|---|---|---|
| **Code** | **Items** | **Note/Sch** | **Income Statement Amounts** |
| 7,070 | Profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method | 6(7) | *60,516* |
| 7,000 | Total non-operating revenue and expenditure | | *22,030* |

3

| | | | |
|---|---|---|---|
| **7,900** | **Net profit before tax** | | **286,917** |
| 7,950 | Expense of income tax | 6(26) | -37,409 |
| 8,200 | Net profit of the current period | | 249,508 |
| | Other comprehensive income | | |
| | Items that will not be reclassified to profit/loss | 6(16) | |
| 8,311 | Re-measured amount for defined benefit plan | 6(7) | -17,778 |
| 8,330 | Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss | | -10,643 |
| 8,349 | Tax related to items that will not be reclassified to profit/loss | 6(26) | 3,023 |
| | Items that may be reclassified to profit/loss subsequently: | | |
| 8,361 | Exchange difference of the financial statements made by the foreign operation agency | 6(20) | -99,121 |
| 8,362 | Unrealized evaluation profit/loss on available-for-sale financial assets | 6(5) | -58,500 |
| 8,380 | Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method | 6(7) | -2,752 |

In response to Petitioners' administrative case brief, Unicatch, in its rebuttal brief, argued if Commerce were to consider Chun Yu's "Net profit before tax (286,917)" for CV Profit, the agency should adjust this amount by the following two line items:

1. Code 8330 - "Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss": (-10,643)

2. Code 8380 - "Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method": (-2,752)

Unicatch reasoned that "notwithstanding its accounting practice to the contrary, losses incurred by its subsidiaries, related parties and joint ventures do affect Chun Yu Group's total cost of production and total cost of goods sold" and that "consequently, the Department should offset Chun Yu's "net profit before tax" by the amount of this loss i.e. 10,643" and "2,752". Unicatch Rebuttal Brief, 10. **P.R. 159, C.R. 234**.

As such, Unicatch explicitly put forth its argument that Commerce should apply losses (and, by extension, profit) incurred by Chun Yu's subsidiaries, related parties and joint ventures to obtain an adjusted net profit before tax.

Chun Yu's statement contains a similarly worded third line item, as follows:

3. Code 7070 - "Profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method": (60,516)

Although Unicatch did not specifically mention the similarly worded line item at Code 7070, this omission does not detract from the fact that Unicatch's rebuttal brief "put {} the agency on notice of the relevance of such arguments and afford{ed} it an opportunity to fully consider and explain its response." *Ad Hoc Shrimp Trade Action Comm. v. United States*, 925 F. Supp. 2d 1367, 1370 n.9 (CIT 2013). As such, contrary to Government's and Mid Continent's arguments, Unicatch did exhaust its administrative remedies by specifically addressing the precise issue that underlies its argument to offset the "Net profit before tax (286,917) by the profits of its subsidiaries, related parties and joint ventures reported at Code 7070 (60,516).

Contrary to the Goverrment's argument that "Unicatch, in foregoing the administrative process, deprived Commerce of the opportunity to consider the argument, make its determination, and state its reasoning", Def. Br., 10, record evidence shows that Commerce did consider these arguments and gave a reasoned finding that the profits or losses of Chun Yu's

5

subsidiaries, related parties and joint ventures should not be used to adjust its net profit before taxes.  Commerce reasoned:

> We disagree with the respondents that certain adjustments are appropriate, based on evidence on the record, to our use of "Net Profit Before Tax." We find that **line item "Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss,"** line item "Exchange difference of the financial statements made by the foreign operation agency," and **line item "Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss," should not be included in the profit adjustment because losses incurred by Chun Yu's affiliate do not relate to Chun Yu's total cost of production and total cost of goods sold.** …… It is Commerce's practice to make adjustments when the adjustments reasonably reflect the costs associated with production of the subject merchandise. By not including these line item adjustments, we can rely on costs that reflect the cost of production of subject merchandise and not the comprehensive costs, as argued by the respondents. Therefore, for these final results, we have used "Net Profit Before Tax" for our calculation of Chun Yu's CV profit ratios with none of the adjustments proposed by the respondents.[1]

As such, even if arguendo "Unicatch did not raise an argument regarding offset with line item 7070 during the administrative process", Gov. Br., 9, record evidence demonstrates that Commerce, in fact, considered the precise issue subject to this Civil Action:  whether Commerce should  adjust Chun Yu's net profit before tax by profit / losses of its subsidiaries / related parties / joint ventures.  Commerce addressed Chun Yu's arguments and provided a reasoned finding in the context of Code 8330 and 8380. Thus, Unicatch's failure to raise this precise issue for Code 7070 (60,516) does not allow this Court to dismiss Unicatch's claim for failure to exhaust administrative remedies.

---

[1] Memo from USDOC To DAS/EC Pertaining to Interested Parties Issues and Decision Memo (Mar. 18, 2019) (emphasis added).  **PR 164, 3805998-01**.

### B. Alternatively, Unicatch's Failure to Exhaust Should be Excused

Assuming arguendo that Unicatch failed to direct Commerce's attention to the third line item at Code 7070, such a failure does not constitute grounds to dismiss this action.

*Valley Fresh Seafood, Inc. v. United States,* 31 C.I.T. 1989, 1989-1998 (Ct. Int'l Trade 2007) supports Unicatch's claim exhaustion doctrine does not apply:

> The court may excuse a party's failure to raise an argument before the administrative agency if, as occurred in this case, the agency in fact considered the issue. . . . "{C}ourts have waived exhaustion if the agency has had an opportunity to consider the identical issues presented to the court . . . but which were raised by other parties, or if the agency's decision, or a dissenting opinion, indicates that the agency had the opportunity to consider the very argument pressed by the petitioners on judicial review."

Likewise, in *Itochu Bldg. Prod. Co. v. United States*, 39 ITRD 1522 (Ct. Int'l Trade 2017) the court explained that "{a} party may be excused from failure to raise an argument before the administrative agency ... if it is clear that the agency had an opportunity to consider it."

In *Zhaoqing Tifo New Fibre Co. v. United States*, 60 F. Supp. 3d 1328, 1355–59 (Ct. Int'l Trade 2015) ("*Zhaoqing Tifo*") (emphasis added), in the context of a closely similar fact pattern, the Court held that the court should not dismiss the action,

> In addition, there is a second, related exception that would similarly serve to excuse any failure to exhaust by Zhaoqing Tifo (again, assuming *arguendo* that the doctrine of exhaustion otherwise applied). Specifically, **the exhaustion requirement does not bar a plaintiff from raising an issue in litigation if the agency in fact had an opportunity to consider the issue at the administrative level, whether or not the agency actually availed itself of that opportunity.** *See, e.g., Indiana Utility Regulatory Comm'n v. FERC,* 668 F.3d at 739 (acknowledging exception to doctrine of exhaustion "when an agency has considered the argument"); *Ningbo Dafa Chemical Fiber Co. v. United States,* 580 F.3d 1247, 1259 (Fed.Cir.2009) (sustaining Court of International Trade's ruling that plaintiff's litigation of

7

issue was not barred by doctrine of exhaustion where Commerce had opportunity to consider plaintiff's "alternative methodology" in course of agency proceeding), *aff'g,* 32 CIT 926, 933, 577 F.Supp.2d 1304, 1311 (2008) (stating court's disagreement with Government's "stance" that "Commerce lacked the opportunity to consider" issue raised by plaintiff in litigation); *Portland General Electric,* 501 F.3d at 1023–25 (explaining that failure to exhaust is excused where "{the} agency ... had an opportunity to consider the issue{,} .... even if the issue was considered sua sponte by the agency").

The record here leaves no doubt that Commerce had an opportunity to consider the potential for double counting of energy inputs as a result of the agency's inclusion of coal in the factors of production database, in tandem with its use of P.T. Tifico's financial statements. As discussed immediately above, the double counting issue was raised at a minimum by the Domestic Producer—and the fact that Commerce thus had an opportunity to consider the issue in the Final Results would alone suffice to preserve Zhaoqing Tifo's right to pursue its double counting claim in this forum. But, in addition, the record further makes it clear that Commerce in fact considered the potential for double counting, at least as to some energy inputs.
Specifically, Commerce's Issues and Decision Memorandum recognizes that "P.T. Tifico's financial statement does not break out energy {costs}." … Therefore, "in order to prevent double counting" (by having electricity and water both captured in the surrogate financial ratios and also included in the factors of production database), Commerce "placed all electricity and water costs into the {manufacturing/factory} overhead numerator" in the financial ratios, and removed from the factors of production database the "electricity and water {costs}" that the agency had included in the database in the Preliminary Results. *Id.* at 11; *see also* Final Results, 78 Fed. Reg. at 2367 (stating that Commerce "did not separately value electricity and water in the final margin program because these factors of production are already captured in the surrogate financial ratios"). However, Commerce did not address any potential double counting of the "other energy factors" (beyond water and electricity) to which the Domestic Producer's rebuttal brief referred. *See, e.g.,* Domestic Producer's Administrative Rebuttal Brief at 14 (stating that P.T. Tifico's financial statements have "no breakout for electricity, water or *other energy factors* ") (emphasis added).

As such, even assuming arguendo that the doctrine of exhaustion did apply, any failure to exhaust by Zhaoqing Tifo would be excused, because Commerce was not deprived of the opportunity to address the double counting of energy inputs in the Final Results. In fact, Commerce's Final Results did address double counting—albeit only as to electricity and water, and not coal or natural gas or any other source of energy.

In *Zhaoqing Tifo*, a common accounting issue underlay three items – electricity, water and other energy factors. Commerce considered only two out of three items – electricity and water – that were specifically raised by the respondent and did not address the third item – other energy factors – which was not specifically raised by the respondent, but which involved the same issue. The Court excused the respondent's failure with regard to the third item – other energy factors. An identical issue arises in this case. Unicatch raised an issue for two of three line items (akin to electricity and water) but did not specifically raise the issue for the third line item (akin to other energy factors). Consequently, Commerce considered identical argument for two items but did not expressly address the issue for the third item. In such a situation, *Zhaoqing Tifo* supports a conclusion that Unicatch's failure to expressly raise the issue for the third line item (applying a rigorous test to precisely exhaust by dotting all "i"s and crossing all "t"s) should be excused and the issue for Code 7070 (60,516) should be subject to judicial review.

Finally, the statute, under § 2637(d), provides that "the Court of International Trade shall, *where appropriate*, require the exhaustion of administrative remedies." As such, exhaustion is not a mandatory threshold prerequisite for litigation. The controlling statute vests discretion in the Court to waive exhaustion under appropriate circumstances. *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1363–64 (Fed. Cir. 2019) ("*Weishan Hongda*") (emphasis added) discusses this legal issue.

> We clarify that the requirement to exhaust administrative remedies under § 2637(d) is *not* jurisdictional. ….
>
> In analyzing § 2637(d), we have explicitly "held that exhaustion is not strictly a jurisdictional requirement and therefore the {CIT} may waive the requirement at the court's discretion." *United States v. Nitek Elecs., Inc.*, 806 F.3d 1376, 1381 (Fed. Cir. 2015). This conclusion is correct because § 2637(d) speaks in general terms and Congress did not identify under which particular circumstances administrative remedies should be exhausted. *See*

28 U.S.C. § 2637(d); *see also Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000) ("It is well settled that when Congress has not clearly mandated the exhaustion of particular administrative remedies, **the exhaustion doctrine is not jurisdictional, but is a matter for the exercise of 'sound judicial discretion.'** " (quoting *McCarthy*, 503 U.S. at 144, 112 S.Ct. 1081)). Instead, § 2637(d) affords the CIT discretion through its inclusion of its "where appropriate" clause, *see* 28 U.S.C. § 2637(d) ("{T}he {CIT} shall, *where appropriate*, require the exhaustion of administrative remedies." (emphasis added)), which is at odds with traditional notions of jurisdiction, *see United States v. Priority Prods., Inc.*, 793 F.2d 296, 300 (Fed. Cir. 1986) (explaining that "Congress appears to have recognized" § 2637(d)'s non-jurisdictional nature "by granting the {CIT} some discretion to excuse the failure to exhaust administrative remedies"); *see also Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145–46 (Fed. Cir. 2013) (recognizing the **CIT, in its discretion, should assess whether exhaustion is required by considering "the purposes served by requiring exhaustion in the particular case"**.

In *Itochu Bldg. Prod. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013), the Court discussed the twin purposes of exhaustion as follows:

> The requirement that invocation of exhaustion be "appropriate," however, requires that it serve some practical purpose when applied. Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness.
>
> Requiring exhaustion can protect administrative agency authority and promote judicial efficiency. *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The requirement can protect an agency's interest in being the initial decisionmaker in implementing the statutes defining its tasks. *Id.* And it can serve judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution.

In the instant case, the issue underlying the third line item at Code 7070 was specifically raised by Unicatch with regard to two other line items at Code 8330 and Code 8380. Commerce considered this issue by its reasoned finding that net profit before tax cannot be adjusted by profit / losses of Chun Yu's subsidiaries / related parties / joint ventures. As such, in the instant case,

Commerce was indeed the initial decision maker on this issue. All the agency had to do was simply extend the same rationale to the treatment of the third line item at Code 7070. This extension did not involve any further development of the record and did not impugn the agency's ability to be the initial decision maker of the facts. As such, *Weishan Hongda* and *Itochu* require that this Court consider Unicatch's argument with respect to the third line item at Code 7070.

### C. Judicial Precedent Cited by the Defendant are readily distinguishable from the facts in this case

Defendant argues that "to the extent Unicatch argues, in its reply brief, that it raised the offset issue with regard to other line items, the fact that related issues were raised below does not relieve Unicatch of its obligation to exhaust its arguments before bringing them to the Court." Def. Br., 10. In support of its argument, Defendant cites judicial precedent that can be easily distinguished from the facts in this case.

First, Defendant argues that "in *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1371 (Ct. Int'l Trade 2018), the plaintiff argued that its inter-product argument was part and parcel of its zeroing allegations" {but} "the Court rejected that argument because challenging one aspect of the statute did not incorporate every conceivable challenge to elements of that analysis" Def. Br., 10. Defendant attempts to equate the above facts with those in the instant case, reasoning that "here, Unicatch challenged Commerce's use of line item 7900, 'net tax before profit' and argued, during the administrative proceedings, that Commerce should offset line item 7900 with line items 8330, 8380, and 8361 in Chun Yu's financial statement" but "it did not make a similar argument with regard to line item 7070" and therefore, "as in *Dillinger*, Unicatch's challenge to one part of a financial statement does not incorporate all challenges to every aspect of that financial statement." Def. Br., 10. The Government's arguments are unavailing since the underlying facts

in *Dillinger France S.A. v. United States*, 350 F. Supp. 3d 1349, 1372 (Ct. Int'l Trade 2018) can be distinguished from this case.

> The issue here -- whether § 1677f-1(d)(1)(B) ever permits Commerce to use the A-to-T method when evaluating significant price differences between products -- implicates both of these concerns; had Dillinger raised its inter-product argument at the administrative level, "Commerce would have had the opportunity to better develop the record and apply its expertise to assess its {practice}." … Dillinger's contention that its inter-product argument is merely "part and parcel" of its zeroing allegations does not excuse its failure to raise the inter-product argument at the administrative level. … A challenge to one aspect of § 1677f-1(d)(1)(B)'s application "do{es} not incorporate any conceivable challenge to elements of that analysis."

*Dillinger* dealt with two distinct issues: (a) whether significant price differences covered one product or more than one product and (b) whether zeroing is permissible under the A-T comparison methodology. The significant price difference analysis is a threshold prerequisite for relying on an A-T comparison. At the administrative level, the respondent raised only the second issue of zeroing. As such, the Court correctly held that the respondent had failed to exhaust its administrative remedies with regard to the inter-product price comparison argument. It reasoned that had this factual argument been raised, Commerce would have had the opportunity to develop the facts accordingly. Absent the development of facts, the Court correctly ruled that the respondent failed to exhaust its administrative remedies. These are not the facts in this case. Code 7070, 8330 and 8380 are nearly identically worded and give rise to the identical legal issue. Therefore, *Dillinger* does not support Defendant's argument.

Second, Defendant cites *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) ("*Rhone Poulenc*"), stating that in that case, the Court held that the "appellant waived argument even though it was characterized as "simply another angle to an issue raised" and that likewise "because Unicatch failed to raise an argument with regard to line item 7070 below, it

should be barred from doing so here." Gov. Br., 10. This argument should be rejected because

*Rhone Poulenc* is distinguishable on its facts The *Rhone Poulenc* court reasoned:

> Rhone Poulenc argues that even if the ITA could permissibly rely on the 60 percent margin from the 1980 entries, it was nevertheless required to update the data underlying that margin to account for changes in the interest rate and the exchange rate of the French franc since 1980. The CIT rejected this argument on the ground that Rhone Poulenc never asserted it before the ITA. 710 F.Supp. at 348; 710 F.Supp. at 350.
>
> Rhone Poulenc concedes that it never raised this *argument* before the ITA, but contends it is simply another angle to an *issue* which it did raise before the ITA, whether the 1980 data were the best information. It argues that the Supreme Court's decision in *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941), authorized appellate courts to consider new arguments so long as the general issue was raised at the agency level. We disagree. In *Hormel,* the court stated that "Ordinarily an appellate court does not give consideration to issues not raised below.... There may be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." 312 U.S. at 556–57, 61 S.Ct. at 721–22.
>
> This is not such an exceptional case. The CIT found, and Rhone Poulenc does not dispute, that it did not raise the adjustment arguments before the ITA "for tactical reasons." 710 F.Supp. at 348; 710 F.Supp. at 350. Far from it being unjust to Rhone Poulenc, it would have been unjust to the ITA and wasteful of public resources to allow Rhone Poulenc to belatedly raise the argument under these circumstances.

In the above case, the respondent raised only one issue: Whether the application of a 60 percent margin from the 1980 entries was the best available information. It failed to raise a second issue: Whether if Commerce were to select the 60 percent margin, it was required to update the data underlying that margin to account for changes in the interest rate and the exchange rate of the French franc since 1980. The second issue, though related to the first issue, is obviously separate and distinct from the latter and requires a different kind of inquiry and factual development of

13

record. In the instant case, there is no second issue. To decide the issue raised by Unicatch, Commerce was not required to pursue a different kind of inquiry and to develop additional evidence of record As such, *Rhone Poulenc* is distinguishable from the facts in this case.

## CONCLUSION

For all of the reasons discussed above, Plaintiffs respectfully request that the Final Results be remanded to Commerce with instructions to grant the relief requested and to provide such other and further relief as this Court deems just and appropriate.

                                      Respectfully submitted,

                                      */s/ Ned H. Marshak*
                                      Ned H. Marshak
                                      Max F. Schutzman
                                      Dharmendra N. Choudhary

                                      Grunfeld, Desiderio, Lebowitz,
                                      Silverman & Klestadt LLP
                                      1201 New York Ave., NW -Suite 650
                                      Washington, D.C. 20005
                                      (202) 783-6881

                                      *Counsel for Plaintiffs*

October 22, 2019

## CERTIFICATE OF COMPLIANCE

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiffs' Reply Brief, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2007, is 4,209 words, less than 6,000 word limit.

/s/ Dharmendra N. Choudhary
Dharmendra N. Choudhary
*Counsel for Plaintiffs*

Dated: October 22, 2019

10372186_1