Slip Op. 19-163

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNICATCH INDUSTRIAL CO., LTD. AND TC INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> MID CONTINENT STEEL & WIRE, INC., <br><br> Defendant-Intervenor. | Before: Mark A. Barnett, Judge <br> Court No. 19-00052 |

## OPINION

[Denying Plaintiffs' Motion for Judgment on the Agency Record.]

Dated: December 17, 2019

Ned H. Marshak, Max F. Schutzman, and Dharmendra N. Choudhary, Grunfeld, Desiderio, Lebowitz, Silverman & Klestdadt LLP, of New York, NY, for Plaintiffs.

Sosun Bae, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director. Of counsel on the brief was Vania Wang, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Adam H. Gordon and Ping Gong, The Bristol Group PLLC, of Washington, DC, for Defendant-Intervenor.

      Barnett, Judge: Plaintiffs, Unicatch Industrial Co., Ltd. and TC International, Inc.

(together, "Unicatch"), challenge the U.S. Department of Commerce's ("Commerce" or

"the agency") final results in the second administrative review of the antidumping duty order on certain steel nails from Taiwan.  *See* Compl., ECF No. 6; *Certain Steel Nails From Taiwan*, 84 Fed. Reg. 11,506 (Dep't Commerce Mar. 27, 2019) (final results of antidumping duty admin. review and partial rescission of admin. review; 2016–2017) ("*Final Results*"), ECF No. 22-4, and accompanying Issues and Decision Mem., A-583-854 (Mar. 15, 2019), ECF No. 22-5.[1]

Unicatch challenges Commerce's purported failure to adjust Unicatch's constructed value ("CV") profit ratio, derived in part using the "Net Profit Before Tax" line item in a Taiwanese surrogate company's financial statement, by a separate line item amount reflecting profits earned by the surrogate company's subsidiaries.  Pls.' Mot. for J. on the Agency R., ECF No. 25, and Mem. of Law in Supp. of Pls.' Mot. for J. on the Agency R. ("Pls.' Mem."), ECF No. 25; Pls.' Reply Br. ("Pls.' Reply"), ECF No. 28.  Defendant United States ("the Government") and Defendant-Intervenor Mid Continent Steel & Wire, Inc. ("Mid Continent") defend the *Final Results* on the basis that Unicatch failed to exhaust its administrative remedies by not arguing for this adjustment before Commerce.  Def.'s Resp. to Pls.' Mot. for J. on the Agency R. ("Def.'s Resp."), ECF No. 26; Def.-Int.'s Resp. Br., ECF No. 27.[2]

---

[1] The administrative record for this case is divided into a Public Administrative Record ("PR"), ECF No. 22-2, and a Confidential Administrative Record ("CR"), ECF No. 22-3.  Parties submitted joint appendices containing record documents cited in their briefs.  *See* Public J.A. ("PJA"), ECF No. 30; Confidential J.A. ("CJA"), ECF No. 29.  The court references the confidential version of the relevant record documents, unless otherwise specified.

[2] Mid Continent adopted and incorporated by reference the Government's arguments and did not present additional arguments.  Def.-Int.'s Resp. Br. at 1–2.

For the following reasons, the court finds that Unicatch failed to exhaust its administrative remedies with respect to the single argument before the court and no exception applies to excuse this failure. Accordingly, the court denies Unicatch's motion.

## BACKGROUND

On September 13, 2017, Commerce initiated the second administrative review of the antidumping duty order on certain steel nails from Taiwan. *Initiation of Antidumping Duty and Countervailing Duty Reviews*, 82 Fed. Reg. 42,974, 42,980 (Dep't Commerce Sept. 13, 2017), PR 6, CJA Tab 4. Unicatch was among the companies Commerce selected for individual examination. Selection of Respondents for the 2016–2017 Admin. Review of the Antidumping Duty Order on Certain Steel Nails from Taiwan (Dec. 6, 2017), PR 24, CJA Tab 5.

Commerce issued its preliminary findings on August 10, 2018. *Certain Steel Nails From Taiwan*, 83 Fed. Reg. 39,675 (Dep't Commerce Aug. 10, 2018) (prelim. results of antidumping duty admin. review and partial rescission of admin. review; 2016–2017) ("*Prelim. Results*"), PR 144, CJA Tab 9; *see also* Decision Mem. for Prelim. Results of Antidumping Duty Admin. Review (Aug. 3, 2018) ("Prelim. Mem."), PR 135, CJA Tab 8. Because Unicatch lacked a viable home market or third country market to

use as the basis for normal value, Commerce calculated normal value based on constructed value. Prelim. Mem. at 12.[3]

In the absence of actual profit information, Commerce may use "any other reasonable method" to calculate CV profit.[4] In this case, Commerce used the simple average of the net profits reflected in surrogate financial statements placed on the administrative record by interested parties. I&D Mem. at 12.

In the underlying proceeding, interested parties submitted financial statements from four Taiwanese producers for Commerce to use to calculate CV profit: Chun Yu Work and Co., Ltd. ("Chun Yu"), OFCO Industrial Corp., Sheh Fung Screws Co. Ltd., and Sumeeko Industries Co. Ltd. Prelim. Mem. at 16; *see also* Unicatch's Letter Pertaining to Factual Information for CV Profit and ISE - part 3 (June 15, 2018) ("Unicatch's 6/15/18 Ltr."), Ex. 11A, PR 98, CJA Tab 6 (Chun Yu's 2016 financial

---

[3] Commerce calculates normal value using sales in the home market or a third country market that are at or above the cost of production. 19 U.S.C. § 1677b(b)(1). When there are no such sales, Commerce calculates normal value "based on the constructed value of the merchandise." *Id.* The cost of production includes "the cost of materials and of fabrication or other processing" used in manufacturing; "selling, general, and administrative expenses"; and the cost of packaging. *Id.* § 1677b(b)(3). Constructed value includes similar expenses and an amount for profit. *Id.* § 1677b(e).

[4] The statute directs Commerce first to use the respondent's actual profit information, 19 U.S.C. § 1677b(e)(2)(B)(i), but when that information is unavailable, Commerce may use the weighted average of the profits realized by other exporters or producers subject to the review, *id.* § 1677b(e)(2)(B)(ii). When neither of those options are available, Commerce may derive the CV profit amount "based on any other reasonable method, except that the amount allowed for profit may not exceed the amount normally realized by exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise." *Id.* § 1677b(e)(2)(B)(iii).

statements). Commerce selected the first three but disregarded the fourth due to the agency's practice of excluding financial statements from companies with sales "predominantly or exclusively to the U.S. market." Prelim. Mem. at 16.[5] Commerce preliminarily calculated a zero percent dumping margin for Unicatch. *Prelim. Results*, 83 Fed. Reg. at 39,676.

On December 3, 2018, Unicatch submitted its administrative case brief, in which it argued that Commerce should incorporate in the final determination certain minor corrections identified in Commerce's verification report. Admin. Case Br. of Unicatch (Dec. 3, 2018) at 2, PR 153, CJA Tab 10. Mid Continent, the petitioner in the underlying proceeding, argued that Commerce should not use Chun Yu's financial statements, Case Br. (Dec. 3, 2018) at 5–7, CR 231, PR 154, CJA Tab 11, but that, if it did, Commerce should begin the profit calculations for Chun Yu's data with line item 7900, "net profit before tax," and not line item 8200, "[t]otal consolidated profit/loss of the current period," as advocated by Unicatch, *id*. at 7. According to Mid Continent, "[t]he difference between the two lines are various so-called 'comprehensive income items' that do not represent actual reportable costs and expenses under the [agency's] practice." *Id*. Because the amount in line item 8200 is much smaller than the amount in line item 7900 (63,737 as compared to 286,917), Mid Continent argued, beginning with

---

[5] Commerce also declined to use financial statements from companies in other countries in light of the availability of suitable financial information from the subject country. Prelim. Mem. at 16.

line item 8200 would distort the calculations and greatly understate the CV profit ratio. *Id.* at 8.

In its December 10, 2018 rebuttal brief, Unicatch argued that the agency's "practice of elevating substance over form" requires that certain items listed *after* "net profit before tax" should nevertheless be considered "actual reportable costs and expenses." Admin. Rebuttal Br. of Unicatch and PT (Dec. 10, 2018) ("Unicatch's Rebuttal Br.") at 8–9, CR 234, PR 159, CJA Tab 13. Thus, Unicatch argued, Commerce

> is required to make necessary adjustments in order to include in its ratio calculations all of the income / expense line items that affect the cost of goods sold, even though they were not factored by Chun Yu Group into the computation of its reported "net profit before tax". Not including such line items would result in a distorted ratio.

*Id.* at 10. To that end, and relevant here, Unicatch urged Commerce to deduct from "net profit before tax" the following two line items representing losses incurred by its subsidiaries: (1) line item 8330: "Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss," in the amount of -10,643; and (2) line item 8380: "Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss," in the amount of -2,752. *Id.*

Commerce issued its *Final Results* on March 27, 2019. Commerce calculated a 6.16 percent weighted average dumping margin for Unicatch, *Final Results*, 84 Fed. Reg. at 11,507, based, in part, on its consideration of the interested parties' comments

on the proper method of calculating CV profit ratios, I&D Mem. at 12–16. Commerce agreed with Mid Continent that it should begin its CV profit calculation with "net profit before tax" and disagreed with Unicatch's suggested adjustments. *Id.* at 12–13. Commerce explained that "Chun Yu's CV profit ratios reflect that of an otherwise acceptable surrogate producer and to include the consolidated incomes or losses from Chun Yu's other affiliated company's [*sic*] would introduce the incomes and losses of companies for which we do not have surrogate information (*e.g.*, financial statements)." *Id.* at 13. Commerce declined to make adjustments based on the amounts in line items 8330 and 8380 "because losses incurred by Chun Yu's affiliate do not relate to Chun Yu's total cost of production and total cost of goods sold" and those amounts "are not incorporated into 'Net Profit Before Tax' in Chun Yu's income statements." *Id.* Commerce explained that its practice is "to make adjustments when the adjustments reasonably reflect the costs associated with production of the subject merchandise," and "[b]y not including these line item adjustments, [the agency] can rely on costs that reflect the cost of production of subject merchandise and not the comprehensive costs" of the company. *Id.* Unicatch's appeal followed. Summons, ECF No. 1.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[6] and 28 U.S.C. § 1581(c).

---

[6] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and all references to the U.S. Code are to the 2012 edition.

The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i).

### DISCUSSION

### I. Parties' Contentions

Unicatch contends that a remand is required for Commerce to offset "net profit before tax" by the amount of 60,516 reflected in line item 7070 of Chun Yu's financial statements, which is titled "Profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method." Pls.' Mem. at 7–8. According to Unicatch, Commerce's rationale for declining to offset the negative amounts in line items 8330 and 8380, *i.e.*, that the amounts related to Chun Yu's subsidiaries and were not factored in to the "net profit before tax," requires the agency to offset line item 7070 because it too relates to Chun Yu's subsidiaries but *was* factored into "net profit before tax." *Id.* at 8. Unicatch avers that Commerce "treated two similar situations differently, without proffering any rationale for the different treatment" and imposed "arbitrary new criteria" with respect to line item 7070. *Id.*

The Government contends that Unicatch failed to exhaust its administrative remedies with respect to line item 7070 because Unicatch limited the adjustments for which it argued before the agency to line items 8330 and 8380. Def.'s Resp. at 8–11. According to the Government, Unicatch's arguments regarding line items 8330 and 8380 do not extend to line item 7070. *Id.* at 10 ("Unicatch's challenge to one part of a financial statement does not incorporate all challenges to every aspect of that financial

statement."). The Government further contends that none of the exceptions to the exhaustion doctrine apply. *Id.* at 10–11.

In reply, Unicatch argues that it exhausted its administrative remedies with respect to line item 7070 when it argued to Commerce that, irrespective of contrary accounting practices, "losses incurred by [Chun Yu's] subsidiaries, related parties and joint ventures do affect Chun Yu Group's total cost of production and total cost of goods sold" and, thus, Commerce should offset Chun Yu's "net profit before tax" by the amount of these losses. Pls.' Reply at 5 (quoting Unicatch's Rebuttal Br. at 10); *see also id.* (averring that it explicitly argued that Commerce should offset "net profit before tax" by Chun Yu's subsidiaries' "losses (and, by extension, profit)"). In the event the court finds that Unicatch failed to exhaust its administrative remedies by failing to specifically mention line item 7070 in its rebuttal brief, Unicatch argues that any failure should be excused because Commerce had the opportunity to consider the precise issue when it addressed line items 8330 and 8380. *Id.* at 6; *see also id.* at 7–9 (discussing *Itochu Bldg. Prods. Co. v. United States*, Slip Op. 17-73, 2017 WL 2703810, at *4 n.10 (CIT June 22, 2017); *Zhaoqing Tifo New Fibre Co., Ltd. v. United States*, 39 CIT ___, ___, 60 F. Supp. 3d 1328, 1355–59 (2015); and *Valley Fresh Seafood, Inc. v. United States*, 31 CIT 1989, 1989–98 (2007), all cases in which the court declined to require exhaustion).

## II. Legal Standard for Administrative Exhaustion

"[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). While exhaustion is

Court No. 19-00052                                                                                                    Page 10

not jurisdictional, *Weishan Hongda Aquatic Food Co., Ltd. v. United States*, 917 F.3d 1353, 1363–64 (Fed. Cir. 2019), the statute "indicates a congressional intent that, absent a *strong* contrary reason, the [CIT] should insist that parties exhaust their remedies before the pertinent administrative agencies," *id.* at 1362 (quoting *Boomerang Tube LLC v. United States*, 856 F.3d 908, 912 (Fed. Cir. 2017)) (alteration original) (emphasis added). Administrative exhaustion generally requires a party to present all arguments in administrative case and rebuttal briefs before raising those issues before this court. *See Dorbest Ltd v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010); 19 C.F.R. § 351.309(c)–(d). This permits the agency to address the issue in the first instance, prior to judicial review. *See Boomerang*, 856 F.3d at 912–13. The doctrine of administrative exhaustion serves the twin purposes of "protecting administrative agency authority and promoting judicial efficiency." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)).

### III. Unicatch Failed to Exhaust its Administrative Remedies and Commerce Did Not Have the Opportunity to Consider the Precise Argument at Issue

The relationship between the relevant line items is indicated by the following data reproduced (with certain omissions) from information in the administrative record:

| Code | Items | Note/Sch[edule] | Income Statement Amounts |
|---|---|---|---|
| 7070 | Profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method | 6(7) | 60,516 |
| | . . . | | |
| 7900 | Net profit before tax | | 286,917 |
| | . . . | | |
| 8330 | Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method – items that will not be reclassified to profit/loss | | -10,643 |
| | . . . | | |
| 8380 | Consolidated profit/loss amount of the subsidiaries, the related parties and the joint ventures using equity method | 6(7) | -2,752 |
| | . . . | | |
| 8500 | Total consolidated profit/loss of the current period | | 63,737 |

Data from U.S. Dep't of Commerce's Analysis Mem. Pertaining to PT - Attach. 3: CV Spreadsheets (Mar. 20, 2019), PR 168, CJA Tab 16 (data files manually filed); *see also* Unicatch's 6/15/18 Ltr, Ex. 11A. As previously noted, Commerce declined to adjust "net profit before tax" for the negative amounts listed in line items 8330 and 8380 because they were not incorporated into the calculation of "net profit before tax" and, as amounts representing losses incurred by Chun Yu's affiliates, did not relate to Chun Yu's cost of production. I&D Mem. at 13.

Unicatch now seeks to use Commerce's rationale for declining to make the foregoing adjustments to advocate for a separate adjustment based on line item 7070.

*See* Pls.' Mem. at 7–9.  Unicatch further seeks to obfuscate its failure to identify line item 7070 as the basis for a favorable adjustment by accusing the agency of behaving in an arbitrary manner when it failed to make the unrequested adjustment.  *Id.* at 8.  Unicatch's arguments are unpersuasive.

While Commerce's rationale for declining adjustments based on line items 8330 and 8380 *might* apply in support of an adjustment based on line item 7070, Unicatch did not present any arguments to the agency in support of adjustments based on its subsidiaries' profits or losses that *were* factored into "net profit before tax."  Rather, Unicatch focused its arguments on Commerce's ability to essentially reallocate line items listed *after* "net profit before tax" in a manner contrary to Chun Yu's accounting practices based on Unicatch's assertion that those line items nevertheless were related to, and affected, Chun Yu's cost of goods sold.  *See* Unicatch's Rebuttal Br. at 9–10.

Before the court, Unicatch seeks to obtain the relief associated with an adjustment that differs from the adjustments for which it argued before the agency.  In so doing, Unicatch requests the court to find, as a factual matter, that the amount listed in line item 7070 relates to Chun Yu's subsidiaries *and* does not relate to Chun Yu's total cost of production or total cost of goods sold.  It is Commerce's province to weigh the evidence favoring a particular decision in the first instance, however, not the court's.  *See POSCO v. United States*, 42 CIT ___, ___, 296 F. Supp. 3d 1320, 1349 (2018) (citing *Bowman Transp., Inc. v. Ark.-Best Freight System, Inc.*, 419 U.S. 281, 285–86 (1974)).  Moreover, a remand to the agency to consider whether to make the adjustment in the first instance would undermine the interest in judicial efficiency that

administrative exhaustion is intended to protect. *See, e.g.*, *Corus Staal BV*, 502 F.3d at 1379. It would also be "wasteful of public resources." *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Unicatch had the opportunity to present this adjustment to Commerce; it must bear the consequences of its failure to do so.

The cases on which Unicatch relies are readily distinguished. In *Valley Fresh Seafood*, the court declined to require exhaustion of an argument the plaintiff failed to raise in its case or rebuttal brief when Commerce nevertheless "had the full opportunity to consider the [] issue during the administrative review" and explained its position in the agency's decision memorandum. 31 CIT at 1994–95.[7] Likewise, in *Itochu Building Products*, the court declined to require exhaustion when the Government conceded that the issue had been "properly raised in a timely manner, fully briefed by all the parties, and considered by Commerce." 2017 WL 2703810, at *4 n.10 (citation omitted). Unlike *Valley Fresh Seafood* and *Itochu Building Products*, here, Commerce did not have the opportunity to consider this precise issue—whether to deduct the amount in line item

---

[7] The court also based its decision on findings that Commerce did not provide the parties with notice, prior to issuing its final determination, of the way in which it intended to apply a pertinent regulation and that Commerce departed from agency practice in its final determination. *Valley Fresh Seafood*, 31 CIT at 1994, 1996. The court reached this conclusion notwithstanding the petitioner's inclusion of relevant arguments in its case brief, to which the plaintiff could have responded in its rebuttal brief. *See id.* at 1992, 1995–96. The U.S. Court of Appeals for the Federal Circuit's opinion in *Boomerang* calls into question this aspect of the court's opinion. 856 F.3d 912–13 (holding that Commerce is not required to "expressly notify interested parties any time it intends to change its methodology between its preliminary and final determinations" when relevant data is placed on the administrative record and parties advance relevant arguments in their case briefs, to which others may respond in their rebuttal briefs).

7070 from "net profit before tax"—or present relevant explanation in the Issues and Decision Memorandum.

In *Zhaoqing Tifo*, the court provided three reasons for excusing the plaintiff's failure to present its arguments regarding the potential for double counting of energy inputs to the agency. First, the court noted that unanticipated changes between the preliminary and final determinations meant that judicial review constituted the plaintiff's "first meaningful opportunity to challenge Commerce's decision"; thus, the doctrine of administrative exhaustion did not apply. *Zhaoqing Tifo*, 60 F. Supp. 3d at 1350 (quoting *Valley Fresh Seafood*, 31 CIT at 1994). Second, to the extent that the doctrine applied, the court further found that any failure by the plaintiff to raise its argument would be excused because the petitioner "specifically and explicitly" raised the issue in its administrative rebuttal brief. *Id.* at 1353. Finally, the record shows that Commerce had the opportunity to consider the issue of double counting—and did so with respect to electricity and water—but, for reasons that are unclear, did not with respect to other energy inputs, such as coal. *Id.* at 1355–59.

Unicatch points to the fact that, in *Zhaoqing Tifo*, exhaustion was not required when Commerce considered double counting with respect to two items (electricity and water) but not the third (coal), to argue that its failure to expressly address line item 7070 should be excused by virtue of its raising the "identical" issue of adjustments for line items 8330 and 8380. Pls.' Reply at 9. Unicatch suggests that requiring exhaustion under these circumstances would amount to an unnecessarily "rigorous test to precisely exhaust by dotting all 'i's and crossing all 't's." *Id.* The problem for Unicatch, however,

is that its argument with respect to line item 7070 is not—and, thus, would not have been—identical to its arguments respecting line items 8330 and 8380.  Further, as indicated above, adjusting for line item 7070 would require distinct findings that Commerce was not called upon to make.  This is not simply a matter of dotting "i's" and crossing "t's"; "[a]rguments must be presented *in toto* for this entire judicial review process to work sensibly."  *Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, 41 CIT \_\_\_, \_\_\_, 277 F. Supp. 3d 1346, 1353 (2017).

### CONCLUSION

For the foregoing reasons, the court sustains Commerce's *Final Results*.  Unicatch's motion for judgment on the agency record is denied.  Judgment will be entered accordingly.

/s/     Mark A. Barnett    
Mark A. Barnett, Judge

Dated: December 17, 2019  
           New York, New York